En el Tribunal Supremo de Puerto Rico

| José A. Ortiz Nieves y otros<br>        Peticionaria<br><br>                V.<br><br>Unión Carbide Grafito, Inc.<br>         Recurrida<br><br>Carlos Ortiz Morales<br>        Interventor Recurrido | Certiorari<br><br>99 TSPR 108 |
| --- | --- |

Número del Caso: CC-1996-0197

Abogados de la Parte Peticionaria: Lcdo. Felipe Cirino Colón
                                    Lcdo. Juan Mari Brás

Abogados de la Parte Recurrida:    Lcdo. Luis Sánchez Betances
                                   Lcdo. Rafael Pérez-Bachs
                                   Lcdo. Pedro E. Ruiz Meléndez

Tribunal de Instancia, Sala Superior de Humacao

Juez del Tribunal de Primera Instancia: Hon. Antonio J. Amadeo Murga
(Juez de la Unidad Especial de Juces de Apelaciones)

Tribunal de Circuito de Apelaciones, Circuito Regional VI Caguas-Humacao

Juez Ponente: Hon. Cabán Castro

Fecha: 6/30/1999

Materia: Daños y Perjuicios

        Este documento constituye un documento oficial del Tribunal
        Supremo que está sujeto a los cambios y correciones del
        proceso de compilación y publicación oficial de las
        decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**


José A. Ortiz Nieves y otros

    Demandantes-peticionarios

       v.

                          CC-96-197      Certiorari

Union Carbide Grafito, Inc.

    Demandada-recurrida

       v.

Carlos Ortiz Morales

    Interventor-recurrido


SENTENCIA


San Juan, Puerto Rico, a 30 de junio de 1999

Evaluados los planteamientos de las partes, memorandos y documentos anejos, se confirma la Sentencia desestimatoria del Tribunal de Circuito de Apelaciones fechada 7 de mayo de 1996 que determinó correctamente que el recurso apropiado debió ser un certiorari, no apelación, y aquél fue presentado fuera de término pues la Moción solicitando enmiendas y determinaciones de hecho y conclusiones de derecho adicionales no tuvo efecto interruptor.

Lo pronunció el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García emitió Opinión Concurrente. El Juez Asociado señor Fuster Berlingeri emitió Opinión Disidente. El Juez Presidente señor Andréu García y

el Juez Asociado señor Corrada del Río no intervienen. La Juez Asociada señora Naveira de Rodón se inhibió.


                          Isabel Llompart Zeno
                    Secretaria del Tribunal Supremo

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

José A. Ortiz Nieves y otros

    Demandantes-peticionarios

        v.

Union Carbide Grafito, Inc.       CC-96-197      Certiorari

    Demandada-recurrida

        v.

Carlos Ortiz Morales

    Interventor-recurrido

      Opinión Concurrente del Juez Asociado señor Negrón García

      San Juan, Puerto Rico, a 30 de junio de 1999

      **Cada vez que un Tribunal altera pronuncia-mientos finales y firmes, erosiona la estabilidad y certeza del derecho.** Las consecuencias son más graves si ello se da en un escenario procesal de **jurisdicción inexistente**.

      Suscribimos la Sentencia que hoy confirma la negativa del reputado Tribunal de Circuito de Apelaciones (Hons. López Vilanova, Cabán Castro y Rodríguez Maldonado), a expedir un <u>certiorari</u> por falta de jurisdicción.

I

      En el año 1978, José A. Ortiz Nieves y 749 personas más presentaron demanda en daños y

perjuicios contra Union Carbide Grafito, Inc. El 25 de agosto de 1983, el entonces Tribunal Superior, Sala de Humacao, desestimó por inacción, pero a solicitud del Lcdo. Carlos Ortiz Morales —coabogado de los demandantes Ortiz Nieves, et al.,— la reinstaló el 18 de octubre. Transcurrieron tres (3) años. El 26 de junio de 1986, **luego de numerosos apercibimientos e incumplimiento con las órdenes del Tribunal y con una estipulación**[1] entre las partes, dicho foro (Hon. María E. Gómez Velázquez), desestimó la acción de 531 demandantes por incumplimiento con el descubrimiento de prueba. Conforme la norma pautada en Asociación de Propietarios v. Santa Barbara Co., 112 D.P.R. 33 (1982) dictó Sentencia Parcial, dispuso que sería final y ordenó su registro por no existir razón para posponerla. Se archivó en autos copia de la notificación el 1 de julio de 1986. **Los demandantes Ortiz Nieves, et al. no actuaron contra este dictamen**.

Meses después, el 23 de febrero de 1987, luego de los debidos apercibimientos, el tribunal (Hon. Carlos de Jesús Rivera Martínez) dictó sentencia y ordenó el archivo del caso en **su totalidad por inacción**. Se archivó en autos copia de la notificación de la sentencia el 3 de marzo. Tampoco se cuestionó esta sentencia desestimatoria.

El 31 de julio de 1987, **—un (1) año y treinta (30) días desde el archivo de la primera sentencia y ciento cincuenta (150) días desde la segunda**, los demandantes Ortiz Nieves, et al., presentaron una moción de relevo de sentencia alegando tener una razón "no especificada" en las Reglas de Procedimiento Civil que así lo justificaba. El 21 de octubre de 1987, el Tribunal de Instancia (Hon. Carlos de Jesús Rivera Marrero) denegó el relevo sobre la primera sentencia (26 de junio de 1986) por entender que se solicitó fuera de término y los mismos demandantes habían negado fraude. También estimó improcedente el relevo

---

[1] Se estipuló que los interrogatorios que debían contestarse individualmente se completarían en un término "improrrogable" de 60 días desde la fecha de radicación de la Estipulación, y se desestimaría la demanda con perjuicio en cuanto a aquellos demandantes particulares que no cumplieran con lo estipulado. (Pág. 5, Sentencia del 26 de junio de 1986).

de la sentencia del 23 de febrero de 1987 por no haberse desfilado prueba de que existiera conducta intencional maliciosa. A juicio suyo, la prueba sólo demostró falta de comunicación entre clientes y abogados, lo cual no constituía causa suficiente para anular una sentencia por **fraude**.

Los demandantes Ortiz Nieves, et al., pidieron la reconsideración el 5 de noviembre de 1987, y por primera vez solicitaron la citación del Lcdo. Ortiz Morales, quien los había representado anteriormente en el caso. Denegada el 6 de noviembre, acudieron ante nos. Mediante Sentencia del 13 de octubre de 1992,[2] revocamos y ordenamos al Tribunal de Instancia que celebrara una nueva vista evidenciaria en la cual los demandantes pudiesen presentar los testimonios interesados en abono de su contención de fraude.

En acatamiento de ese mandato, el 31 de octubre de 1995, el Tribunal de Primera Instancia, Sala de Humacao (Hon. Antonio Amadeo Murga, Juez de la entonces Unidad Especial de Jueces de Apelaciones), previa vista, denegó el relevo de sentencia mediante Resolución **al entender que no se configuró ningún fraude**. Concluyó que la sentencia se notificó a la representación legal de la comunidad y al Sr. José Ortiz Nieves para que éste la comunicara a la comunidad. Sobre la sentencia del 23 de febrero del 1987, resolvió que tampoco se probó fraude que anulara la sentencia, y aunque estuviera inclinado a revocar bajo los principios de Maldonado v. Srio. de Recursos Naturales, 113 D.P.R. 494 (1982), se encontraba sujeto a nuestra orden de sólo dilucidar la existencia de fraude.

El 27 de noviembre de 1995, los demandantes Ortiz Nieves, et al. solicitaron enmiendas o determinaciones adicionales de hecho y conclusiones de derecho. (Regla 43.3 de Procedimiento Civil). El tribunal las denegó el 2 de febrero de 1996 y notificó el 7 de febrero.

---

[2] El Juez Presidente señor Andréu García y la Juez Asociada señora Naveira de Rodón inhibidos. Los Jueces Asociados señores Rebollo López y Hernández Denton concurrieron con el resultado.

El 8 de marzo de 1996, presentaron un recurso de **apelación** ante el Tribunal de Circuito de Apelaciones. Según indicado, dicho foro dictaminó que el recurso apropiado era el Certiorari, por lo que se había presentado fuera del término. Concluyó que la solicitud de determinaciones adicionales de hechos y conclusiones de derecho no interrumpió el término para acudir en alzada, ya que dicha moción sólo interrumpía en apelaciones contra sentencias, no certiorari contra resoluciones.

No conforme, el 14 de junio de 1996, presentaron este Certiorari.

II

De entrada, debemos despejar toda duda al respecto. Examinamos unos incidentes **post-sentencia**. Ortiz Serrano v. Ortiz Díaz, 106 D.P.R. 445, 449 (1973). Desde González v. Chávez, 103 D.P.R. 474, 475 (nota 1) (1975), reconocimos los dictámenes sobre una moción de relevo de sentencia como Resolución, no Sentencia.[3] **En recta lógica, cuando se acude a la Regla 49.2 es porque ya existe una sentencia final**, **razón por la cual ella misma dispone que su utilización "no afectará la finalidad de [esa] sentencia, ni suspenderá sus efectos."** Cuevas Segarra, José A., Procedimiento Civil, PPPR (Publicaciones JTS, 1995), pág. 268. Claro está, la suspensión de sus efectos únicamente acontece si se resuelve **favorablemente**. Hernández Colón, R., Derecho Procesal Civil, Ed. Michie of P.R., Inc. (1996), pág. 308. Demás está decir que la celebración de una vista y la formulación de determinaciones fácticas en esta clase de incidente, no desvirtúan esta realidad ni convierten en sentencia una resolución; **de ese trámite no nace otra sentencia**.

---

[3] La distinción entre una sentencia y una resolución es que en la primera "se adjudican las controversias habidas en un pleito y se definen los derechos de las partes envueltas." Falcón Padilla v. Maldonado Quirós, res. en 31 de julio de 1995. Su parte dispositiva adjudica las reclamaciones y los derechos y obligaciones de todas las partes. Cárdenas Maxán v. Rodríguez, 119 D.P.R. 642, 655-658 (1987). La resolución "pone fin a un **incidente** dentro del proceso judicial, mientras que la sentencia pone fin a la controversia entre las partes mediante una adjudicación final." (Enfasis nuestro). Rodríguez v.

Esta dinámica procesal y sus efectos, ha causado alguna confusión innecesaria en casos de resoluciones dictadas antes (interlocutorias) y post-sentencia. Rodríguez v. Tribunal Municipal y Ramos, 74 D.P.R. 656, 664-665 (1953; Sánchez v. Municipio de Cayey, 94 D.P.R. 92,99 (1967). El que un aspecto procesal se dilucide **luego de la sentencia** y por ser adversa, cierre el foro de instancia al promovente, **de ninguna manera afecta la finalidad de la sentencia original**. No revive las controversias resueltas entre las partes ni modifica los derechos adjudicados. La negativa a relevar a una parte de una sentencia ya dictada, no resuelve el pleito en sus méritos ni la cuestión litigiosa. Al revisar una solicitud de relevo de sentencia, el Tribunal no entra a dilucidar los derechos de las partes ni las controversias jurídicas dentro de la demanda. La única cuestión a resolver es si la parte promovente satisface los requisitos estatutarios y jurisprudenciales. Como corolario, en alzada, la revisión no va dirigida a la sentencia que puede ser ejecutada; versa sobre la facultad discrecional del juez de instancia al conceder o denegar una solicitud post-sentencia. **Por esta razón, innumerables decisiones nuestras sostienen que la Regla 49.2 no es un sustituto de apelación ni revisión.**

La negativa o concesión de un relevo de Sentencia, es un dictamen que goza de la naturaleza de una Resolución **post-sentencia; no es una Sentencia.**[4] Nuestro ordenamiento jurídico-procesal no provee para que se soliciten determinaciones de hechos y conclusiones de derecho adicionales a **resoluciones**. Por ende, una moción a esos efectos y su concesión por el Tribunal **no afecta su naturaleza adjudicativa ni interrumpe el término para acudir en alzada.** De Jesús Maldonado v. Corporación Azucarera de P.R., res. en 9 de junio de 1998; Andino v.

---

Tribunal, 74 D.P.R. 656, 664 (1953); Camaleglo v. Dorado Wings, Inc., 118 D.P.R. 20, 26 (nota 5)(1986).

[4] Una apelación suspende los efectos de la sentencia. Regla 53.9 de Procedimiento Civil; Art. 4.002 de la Ley de la Judicatura de Puerto Rico de 1994, según enmendada; Regla 18 del Tribunal de Circuito de Apelaciones, antes Regla 17.

<u>Topeka</u>, res. en 10 de abril de 1997. Actuó correctamente el Tribunal de Circuito de Apelaciones.[5]

Para revisarla, el vehículo procedente es el <u>Certiorari</u>, no una Apelación, conforme el Art. 4.002 de la Ley de la Judicatura y las Reglas 14 y 18 del Reglamento del Tribunal de Circuito de Apelaciones, en vigor el 24 de enero de 1995.

### III

La Regla 43.3 de Procedimiento Civil sólo autoriza una solicitud de determinaciones o enmiendas de hechos y conclusiones de derecho ante una sentencia, no resolución. El que se pidan y se hagan en una Resolución adjudicando un **incidente post-sentencia** no la convierte en Sentencia. Una resolución bajo la Regla 49.2 fundamentada como la de autos, responde a que los jueces de instancia deben esforzarse en emitir dictámenes completos, elaborados y razonados para que las partes y los foros apelativos enjuicien la corrección de su determinación. <u>Rodríguez v. Nasrallah</u>, 118 D.P.R. 93, 96, (nota al calce Núm. 3), (1986).

ANTONIO S. NEGRON GARCIA
Juez Asociado

---

[5] No podemos suscribir un relevo de una sentencia dictada hace once (11) años, por la conducta del abogado Ortiz Morales, máxime cuando dicha solicitud se presentó transcurrido en exceso un año después de ser final y firme en una de las aludidas sentencias. **Difícilmente el caso de autos configura fraude <u>inter-partes</u> o al Tribunal; tampoco presenta falta de jurisdicción sobre la persona o materia.**

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jose A. Ortiz Nieves y Otros

    Demandante-Peticionarios

       vs.

Union Carbide Grafito, Inc.      CC-1996-197     Certiorari

    Demandado-Recurrida

       vs.

Carlos Ortiz Morales

    Interventor-Recurrido

Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI.

San Juan, Puerto Rico, a 30 de junio de 1999.

A los fines de comprender cabalmente el asunto ante nos, es menester hacer una relación completa de los hechos del caso, que no aparece en la sentencia de la mayoría del Tribunal, ni en la opinión concurrente en que se apoya dicha sentencia. Veamos.

**I**

Allá para los meses de octubre y noviembre de 1978, 750 personas presentaron demanda en daños y perjuicios contra Union Carbide en el Tribunal de Primera Instancia, Sala Superior de Humacao. Alegaron que la contaminación ambiental provocada por la demandada en el área de Humacao les había afectado seriamente su salud. Para incoar esta acción, los demandantes contrataron los servicios de los abogados, Carlos Ortiz Morales y Ernesto Maldonado Pérez, del

bufete de abogados Maldonado & Ortiz. Dicho bufete estaba localizado en San Juan, Puerto Rico.

Inicialmente, el licenciado Maldonado participó activamente en la tramitación del caso y en los aspectos procesales de descubrimiento de prueba. Así pues, desde 1979 hasta 1982, Maldonado visitó en repetidas ocasiones la comunidad donde residían los demandantes a fin de poder obtener contestaciones a los interrogatorios y de poder concertar citas para llevar a cabo las deposiciones. Las reuniones llevadas a cabo en la comunidad se realizaron en la casa de José Ortiz Nieves, una de las personas que figuraban como demandantes en el caso.

Para noviembre de 1982, se señaló una conferencia sobre el estado del caso a la cual compareció el licenciado Ortiz en representación de los demandantes. En dicha ocasión se suspendió la vista para que las partes llevaran a cabo una estipulación que tuviera el efecto de agilizar los procedimientos.

A partir de esa fecha, ninguna de las partes realizó acción afirmativa alguna a favor de la tramitación del caso. En razón de ello, el 12 de agosto de 1993, el tribunal de instancia expidió una orden para que se mostrara causa por la cual no debía archivar el caso por inacción, a tenor con la Regla 39.2(b) de las de Procedimiento Civil. Conforme a lo intimado, el 25 de agosto de 1983, el tribunal desestimó el caso por inacción.

Resulta menester señalar, que para ese mismo año, el licenciado Maldonado se marchó de Puerto Rico sin dar previo aviso a los demandantes y sin solicitar la renuncia de dicha representación legal ante los tribunales. El 8 de septiembre de 1983, el licenciado Ortiz presentó moción en la cual informó que su sociedad con el licenciado Maldonado había sido disuelta en el 1982 y que la sentencia de archivo en el presente caso había sido enviada al apartado de la extinta sociedad, razón por la cual no tuvo conocimiento de ésta. Por lo anterior, el licenciado Ortiz solicitó el relevo de la sentencia, en vista del interés de los demandantes en continuar con el litigio.

Los demandados se opusieron a dicha moción de relevo e incluyeron en su oposición fotocopia de las numerosas cartas relacionadas al descubrimiento de prueba, enviadas al licenciado Ortiz, de las cuales nunca se obtuvo respuesta. A estas imputaciones el licenciado Ortiz replicó aduciendo que, desde septiembre de 1981 hasta diciembre de 1982, no había practicado como abogado litigante, porque se había retirado a realizar funciones en el Senado de Puerto Rico. Sostuvo también que el bufete continuó operando con el licenciado Maldonado hasta abril de 1982 cuando la sociedad entre ellos quedó disuelta, y que en agosto de 1983, Maldonado partió de Puerto Rico para establecer su residencia en los Estados Unidos.

El 18 de octubre de 1983, el tribunal de instancia dejó sin efecto la sentencia decretando el archivo del caso. De esta determinación compareció ante nos Union Carbide mediante el correspondiente recurso de certiorari. Luego de examinar el referido recurso, el 23 de noviembre de 1983, denegamos su expedición.

Así las cosas, y a pesar de que el tribunal de instancia dejó sin efecto el archivo del caso por inacción, transcurrieron los próximos seis meses sin que las partes tomaran acción en el caso. Ello dio lugar a que el tribunal de instancia volviera a emitir una orden de mostrar causa por la cual no se debía ordenar el archivo del caso. En respuesta a dicha orden, compareció el licenciado Ortiz e informó que había llegado a unas estipulaciones con los demandados para atender el descubrimiento de prueba. Habida cuenta de lo informado, el caso no fue archivado.

El 3 de diciembre de 1984, la demandada solicitó la desestimación del caso. Adujo que los demandantes no habían cumplido con la estipulación sobre descubrimiento de prueba. El licenciado Ortiz compareció mediante moción e intentó aclarar que debido a la cantidad numerosa de demandantes, se le había hecho muy difícil recopilar todas las firmas necesarias para los interrogatorios. Señaló además, que debido a que no poseía computadora, tenía que utilizar una maquinilla, por lo cual el proceso era sumamente lento. Para concluir, solicitó se

le otorgara un término adicional para contestar los interrogatorios que le habían sido sometidos. El 8 de febrero de 1985, el tribunal le concedió para ello un término de treinta (30) días, no sin antes advertirle que la falta de cumplimiento podía conllevar que se declarase sin lugar la causa de acción incoada, con perjuicio.

El 22 de febrero de 1985, Ortiz se comunicó mediante carta con los demandantes y les informó acerca de la necesidad de contestar los interrogatorios y las consecuencias de no hacerlo. En marzo de 1985, los demandados volvieron a solicitar la desestimación de la reclamación debido al incumplimiento de los demandantes con los procedimientos de descubrimiento de prueba. Luego de celebrar una conferencia sobre el estado de los procedimientos, el tribunal le otorgó a los demandantes sesenta (60) días adicionales para completar dichos procedimientos. El 11 de diciembre de 1985, la parte demandada solicitó la desestimación parcial de la causa de acción respecto a 332 demandantes que a esa fecha todavía no habían contestado los interrogatorios. El tribunal le concedió a estos demandantes veinte (20) días adicionales para contestarlos, y les advirtió que al cabo de ese término, a falta de contestación, accedería a la desestimación parcial solicitada por la parte demandada.

El 13 de febrero de 1986, los demandados solicitaron la desestimación de la reclamación de otros demandantes, debido a que, conforme la estipulación aludida, la falta de suministrar cierta información conllevaba en algunos casos la desestimación.

Luego de requerirle sin éxito a los demandantes que explicaran la razón de este último alegado incumplimiento de la estipulación, el 26 de junio de 1986, el tribunal de instancia emitió sentencia parcial en la cual desestimó la causa de acción de 531 demandantes. La notificación del archivo en autos de copia de la notificación de la sentencia le fue enviada al licenciado Ortiz a la dirección que aparecía en autos. Después de que el licenciado Ortiz recibiera la sentencia antes mencionada, no volvió a realizar gestión alguna respecto al pleito

pendiente. Más aun, el 3 de enero de 1987, Ortiz abandonó su práctica privada de la abogacía, para ocupar el cargo de Sub-Secretario del Departamento de Estado del Estado Libre Asociado de Puerto Rico. Surge de autos y de la relación de hechos esbozada por el tribunal de instancia, **que los demandantes desconocían todo lo que había acontecido en su caso**. **Ni el licenciado Ortiz, ni el licenciado Maldonado informaron a sus clientes que no iban a trabajar más en éste ni tampoco renunciaron a su representación legal en el tribunal de instancia**.

Incluso, aun cuando varios clientes visitaron al licenciado Ortiz un mes antes de que éste abandonara su práctica y después de que se archivaran 531 causas de acción, Ortiz no informó a ninguno de ellos sobre estos eventos, haciéndoles creer que la reclamación todavía existía.

Ante la inacción del licenciado Ortiz respecto a las causas de acción restantes, el 23 de febrero de 1987, luego del correspondiente apercibimiento, el tribunal de instancia dictó sentencia y ordenó el archivo de estas reclamaciones por inacción en exceso de seis meses. Al igual que la sentencia anteriormente dictada, esta sentencia le fue notificada al licenciado Ortiz a la dirección que aparecía en autos.

Así las cosas, varios meses después del archivo de las dos sentencias, algunos de los demandantes advinieron en conocimiento de lo acontecido. A raíz de ello, el 31 de julio de 1987, presentaron **por medio de otra representación legal**, una moción de relevo de sentencia a tenor con la Regla 49.2(6) de las de Procedimiento Civil. Alegaron que fueron engañados por sus anteriores abogados respecto al estado del caso y que en todo momento desconocían lo que pasaba en éste.[6]

El 21 de octubre de 1987, el tribunal de instancia denegó la moción de relevo antes mencionada. Concluyó dicho foro que no procedía el

---

[6]**El 11 de marzo de 1993, varios demandantes presentaron una queja por conducta profesional en contra del licenciado Ortiz, la cual está pendiente ante nos.**

relevo de la sentencia dictada el 26 de junio de 1986 porque éste fue solicitado fuera del término fatal de seis meses requerido por las reglas de Procedimiento Civil.  Añadió que dicho término no hubiese aplicado si se hubiera alegado fraude al tribunal, pero explicó que los propios demandantes habían negado tal fundamento en cuanto a la sentencia de junio de 1986.  Respecto a la solicitud de relevo de la sentencia de 23 de febrero de 1987, el tribunal concluyó que no se había desfilado prueba de que existiera una conducta intencional maliciosa por parte del licenciado Ortiz; y que, por el contrario, la prueba sólo demostraba falta de comunicación

entre clientes y abogado, lo cual no constituía causa suficiente para anular una sentencia por fraude.

Inconforme con esta determinación, los demandantes presentaron una moción de reconsideración, mediante la cual por primera vez solicitaron se citara al licenciado Ortiz como testigo.

Denegada dicha reconsideración, los demandantes acudieron ante nos. El 13 de octubre de 1992, dictamos sentencia, y revocamos al tribunal de instancia. Ordenamos a dicho foro a celebrar una nueva vista, en la cual los demandantes pudiesen presentar, por primera vez, los testimonios del licenciado Ortiz y del señor Ortiz Nieves como evidencia del alegado fraude.

El 31 de octubre de 1995, luego de celebrar la vista que le fuera ordenada, el tribunal de instancia emitió **un extenso dictamen de 24 páginas** denegando en su totalidad la solicitud de relevo de sentencia presentada. Este dictamen fue denominado por el tribunal como "resolución" y surge del expediente que se archivó en autos copia de su notificación el 17 de noviembre de 1995. En su "resolución" el foro de instancia resolvió que para que la conducta de un abogado, que provoca la desestimación de la reclamación de su cliente, constituyese fraude al tribunal, tenían que coexistir dos elementos, a saber: 1) que la actuación de dicha representación legal haya sido dolosa; y, 2) que haya habido participación de la parte contraria en esa conducta. Determinó, además, que la desestimación por incumplimiento con el descubrimiento de prueba plasmada en la sentencia de 26 de junio de 1986, se había debido a la falta de recursos de los demandantes, y de su abogado, y a la falta de organización del grupo. Señaló el tribunal que, a pesar del esfuerzo realizado por el licenciado Ortiz para gestionar la contestación a los interrogatorios, **éste cometió un serio error de juicio al permanecer, por sí solo, a cargo de un caso tan complejo**. Indicó además, que si bien los demandantes fueron apercibidos por su abogado de las consecuencias de no contestar los interrogatorios, **no se les dio adecuada notificación de que una sentencia había recaído en su contra**. Según el tribunal de

instancia, esa omisión de informar, aun cuando constituía una violación seria de los deberes que tiene un abogado para con sus clientes, no satisfacía los elementos necesarios para encontrar probado el tipo de fraude que da lugar a la nulidad de la sentencia bajo el palio de la regla 49.2(3) de las de Procedimiento Civil.

Así también, el tribunal determinó que respecto a la sentencia de 23 de febrero de 1987 tampoco se había demostrado la existencia de dolo o de fraude. Resolvió que la omisión de informar a los clientes acerca del estado del caso, y la de no señalar, ni a sus clientes ni al tribunal, su abandono de la práctica privada, constituía, a juicio del tribunal, **una grave falta de diligencia, pero no constituía de por sí fraude o dolo**.

**Para concluir, el tribunal de instancia señaló que a pesar de sentirse inclinado a dejar sin efecto la sentencia a la luz de lo resuelto en Maldonado v. Srio. de Recursos Naturales, 113 D.P.R. 494 (1982), se encontraba impedido de hacerlo. Indicó que el mandato emitido por este Tribunal lo sujetó sólo a examinar la existencia de fraude, sin que le fuera permitido ir más allá de ello, y dejar la sentencia sin efecto por otros fundamentos.**

Así las cosas, el 27 de noviembre de 1995, los demandantes presentaron una moción para solicitar enmiendas o determinaciones adicionales de hecho y conclusiones de derecho. Esta moción fue llevada por la Secretaría del tribunal ante la consideración del juez pasados más de dos meses de presentada, o sea, el 2 de febrero de 1996. Ese día, el tribunal la denegó de plano. El 7 de febrero de 1996, se archivó en autos copia de la notificación.

No conformes, el 8 de marzo de 1996, los demandantes presentaron un recurso de apelación ante el Tribunal de Circuito de Apelaciones.

El 7 de mayo de 1996, el foro apelativo determinó que como se recurría de una resolución de instancia, el recurso apropiado debió ser el de certiorari y no el de apelación. Concluyó además, que acogido como un recurso de certiorari, éste había sido presentado fuera del término, porque la moción solicitando enmiendas o determinaciones adicionales de

hechos y conclusiones de derecho, no surtía el efecto de interrumpir el término en cuestión en los recursos de certiorari presentados contra resoluciones, como era el caso de epígrafe. Como consecuencia, desestimó el recurso. El 16 de mayo de 1996, se archivó en autos copia de la notificación de esa sentencia.

El 14 de junio de 1996, la parte demandante presentó una petición de certiorari ante nos. Adujo la comisión de los siguientes errores:

> 1) Erró el Tribunal de Circuito de Apelaciones al desestimar el recurso de apelación por considerarlo un recurso de certiorari radicado fuera de término.

> 2) Erró el Tribunal de Circuito de Apelaciones al resolver que la moción solicitando enmiendas o determinaciones de hechos y conclusiones de derecho adicionales no interrumpió el término para recurrir ante dicho tribunal.

> 3) Erró el Tribunal de Circuito al negar a los peticionarios el debido proceso de ley y la igual protección de las leyes en su sentencia desestimatoria del recurso.

El 24 de julio de 1996 expedimos el recurso solicitado.

## II

La controversia inicial en el caso de autos se circunscribe a determinar: (1) si la denegatoria en los méritos de una moción de relevo constituye una resolución o una sentencia; y, (2) si da lugar a una apelación, cuyo término puede interrumpirse por la oportuna presentación de una moción de determinaciones de hechos y conclusiones de derecho adicionales, al amparo de la Regla 43.3 de las de Procedimiento Civil.

Por entender que la contestación a estas interrogantes es en la afirmativa, revocaría la sentencia aquí recurrida. Veamos.

El texto de la Regla 43.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R 43.3, vigente al momento de los hechos aquí acontecidos, leía:

> No será necesario solicitar que se consignen determinaciones de hecho a los efectos de una apelación o revisión, pero a moción de parte, presentada a más tardar diez (10) días después de haberse archivado en autos copia de la notificación de la sentencia, el tribunal... podrá enmendar o hacer determinaciones adicionales, y podrá enmendar la sentencia de conformidad. (Enfasis suplido).

La oportuna presentación de una moción al amparo de la antes mencionada regla, interrumpe los términos para presentar una solicitud de reconsideración o de nuevo juicio y para apelar o solicitar revisión. Los términos así interrumpidos comienzan a correr nuevamente a partir del archivo en autos de la notificación de las determinaciones y conclusiones solicitadas. Véase: Regla 43.4 y 53.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R 43.4 y 53.1, respectivamente.

La definición del término "sentencia", antes aludida, la encontramos en la Regla 43.1 de las de Procedimiento Civil,  la cual al momento en que ocurren los hechos aquí en controversia, disponía:

> El término 'sentencia' según se usa en estas reglas, incluye cualquier determinación del tribunal que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse o solicitarse revisión.  32 L.P.R.A. Ap. III R 43.1.

Recientemente, en Banco Santander v. Fajardo Farms Corp., op. de 28 de junio de 1996, 141 D.P.R. ___, 96 JTS 100, tuvimos la oportunidad de analizar un planteamiento similar al de autos.  En dicho caso, se había presentado una moción de relevo de sentencia por falta de jurisdicción, debido a la insuficiencia del emplazamiento en el pleito original.  La moción aludida se presentó luego de haber transcurrido aproximadamente tres años de registrarse la sentencia.  Allí, al igual que en el caso ante nos, el tribunal de instancia denegó la moción aludida en sus méritos mediante una "resolución".  Luego de presentada y denegada una solicitud de determinaciones de hechos adicionales, el Tribunal de Circuito de Apelaciones acogió el recurso de apelación presentado como uno de certiorari y a su vez lo denegó por falta de jurisdicción.  Sostuvo que por tratarse de una resolución, el recurso apropiado para su revisión era el de certiorari, por lo que no le era de aplicación las disposiciones de la Regla 53.1 (d) de Procedimiento Civil que permiten la interrupción del término de apelación mediante la sola presentación de una solicitud de determinaciones de hechos adicionales.

En Banco Santander v. Fajardo Farms Corp., supra, al revocar la determinación del foro apelativo, establecimos que el dictamen emitido, adjudicando en los méritos la moción de relevo, constituía una sentencia final, que podía, en su día, ser apelada. La misma puso fin a la totalidad de la controversia existente entre las partes, a saber: si era nula la sentencia dictada por insuficiencia en el emplazamiento. Una vez determinamos que se trataba de una sentencia y no de una resolución, como mal la había denominado el tribunal de instancia, concluimos que la oportuna presentación de la moción solicitando determinaciones de hechos y conclusiones de derecho adicionales tuvo el efecto de interrumpir el término para acudir en apelación a Circuito. Por otro lado, indicamos que el tribunal inferior podía considerar la única controversia entre las partes, aun pasados seis meses de registrada la sentencia, debido a que la propia regla 49.2 dispone que ese término "no limita el poder del tribunal para: (a) conocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, orden o procedimiento; (b) conceder un remedio a una parte que en realidad no hubiese sido emplazada; y, (c) dejar sin efecto una sentencia por motivo de fraude al tribunal". El hecho de que la moción de relevo hubiese sido presentada dentro del pleito original, pasado el término fatal de seis (6) meses dispuesto por la Regla 49.2 de Procedimiento Civil, en lugar de haber sido presentada mediante un pleito independiente como requiere dicha regla en estos casos, no surtió impacto alguno en nuestra determinación de que el dictamen en cuestión constituía una sentencia. Como allí indicáramos, la naturaleza de la acción de nulidad y del fallo emitido era igual en ambos procedimientos, y en ambos se podía disponer de la controversia sobre nulidad en su totalidad.

Un examen minucioso del caso de epígrafe, a diferencia de lo que entiende la mayoría, requiere resolver aquí como lo hicimos en Santander. La moción de relevo presentada en el caso de autos fue adjudicada en sus méritos por el tribunal inferior y la controversia particular que allí se

adjudicó, se resolvió en su totalidad.[7] Por ello, resulta meridianamente claro que, a tono con lo resuelto en Santander, en el caso de epígrafe la denegatoria a la moción de relevo constituyó realmente una sentencia, por lo que la presentación de la moción de determinaciones adicionales de hechos y conclusiones de derecho tuvo el efecto de interrumpir el término para acudir en apelación.

Nótese, además, que en el caso de autos, la llamada "resolución" de 24 páginas emitida por el tribunal de instancia **contenía un extenso listado de hechos y conclusiones de derecho. La parte afectada no tenía otro medio para solicitar que se enmendaran las extensas determinaciones de hecho y conclusiones de derecho del foro de instancia, que no fuese el mecanismo procesal que ofrece la Regla 43.3 de Procedimiento Civil**.

En vista de todo ello, estimo que el tribunal de circuito erró al acoger el recurso de apelación presentado como certiorari y así denegarlo por presentación tardía.


                                    **III**

En el presente caso, el tribunal de instancia encontró probados unos hechos, que a su juicio, hubiesen dado lugar al relevo de la sentencia en cuestión. Sin embargo, concluyó que estaba impedido de así hacerlo, porque supuestamente el mandato que anteriormente le emitiéramos le requería examinar solamente la cuestión de fraude al tribunal. El Tribunal de Circuito de Apelaciones no consideró este asunto en sus méritos, debido al supuesto escollo procesal que discutiéramos en la parte II de esta opinión.

---

[7]Adviértase que, aun cuando una de las sentencias impugnadas en la solicitud de relevo fue presentada pasado el término de seis meses, ello, al igual que en Santander, no impedía su adjudicación porque se trataba de una de las excepciones establecidas por las reglas, a dicho término a saber: fraude al tribunal. Véase, G.A.C. Fin Corp. v. Rodríguez, 102 D.P.R. 213, 216 (1974).

Es harto conocido que el mandato es el medio oficial que posee un tribunal apelativo para comunicar a un tribunal inferior la disposición de la sentencia objeto de revisión y para ordenarle el cumplimiento de lo acordado. Pueblo v. Tribunal de Distrito, 97 D.P.R. 241 (1969); Graciela v. Yolande, Inc., 65 D.P.R. 705 (1946). Remitido el mandato al foro a quo, éste readquiere jurisdicción sobre el caso a los únicos fines de ejecutar la sentencia, tal cual fuera emitida en revisión. Ante estas circunstancias, el foro inferior no está facultado para abrir nuevamente el caso, ni para reconsiderar o sustituir el mandato que le fuera remitido. Melón Hnos. & Co. v. R. Muñiz, etc. y Villamil, Int., 56 D.P.R. 761 (1940). Este debe limitarse a dar cumplimiento con lo ordenado y lo que haya resuelto el tribunal apelativo constituye, para todos los efectos, la ley del caso. Pan American v. Tribunal Superior, 97 D.P.R. 447 (1969); Fiddler v. Tribunal Contribuciones, 68 D.P.R. 847 (1948).

Ahora bien, en el caso de epígrafe, luego de examinar el aludido mandato que le remitiéramos al tribunal de instancia, estamos convencidos de que éste no tuvo el efecto de circunscribir a la causal de fraude la jurisdicción de dicho foro para considerar la solicitud de relevo de la sentencia en cuestión. En el momento en que dictamos nuestra sentencia, la parte demandante no había podido presentar como evidencia en apoyo de su moción de relevo los testimonios de dos testigos sumamente importantes. Resultaba indispensable que a los fines de sustentar la alegación de fraude, se permitiera la declaración de esos testigos. A falta de éstos, el tribunal se veía impedido de tomar una determinación concienzuda e informada sobre el particular.

Es por ello, que específicamente señalamos en nuestro dictamen la preocupación que nos ocasionó el hecho, de que con posterioridad a la sentencia recurrida, uno de esos testigos corroborara los problemas de comunicación habida entre abogado y cliente, alegados en la moción de relevo como base para sostener el fraude. En razón de ello, dispusimos que, "[s]i bien este caso lleva[ba] catorce (14) años en los tribunales, para evitar un fracaso de la justicia, revoca[bamos] la sentencia

recurrida y ordena[bamos] al foro de instancia que celebr[ase] una nueva vista a tenor con lo dispuesto por la Regla 49.2 para que las partes recurrentes, pu[diesen] presentar la evidencia correspondiente de que hubo <u>fraude al tribunal</u>."

El mandato ordenaba que se permitiese presentar evidencia adicional sobre el alegado fraude al tribunal. **<u>Dicho mandato no disponía que el tribunal estaba impedido de considerar el relevo bajo otros fundamentos</u>**.

A tono con lo antes mencionado, el tribunal de instancia erró al concluir que estaba impedido por nuestro previo mandato de relevar a las partes de la sentencia bajo otra causal que no fuese la de fraude al tribunal.

**IV**

Resta por evaluar si, conforme con las determinaciones de hechos esbozadas por el tribunal de instancia, procede el relevo de aquellas sentencias que ordenaron el archivo de las causas de acción de los aquí demandantes.

La Regla 49.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 49.2, permite que mediante moción a tales efectos y bajo aquellas condiciones que sean justas, un tribunal releve a una parte de una sentencia, entre otras razones, por fraude,[8] **<u>porque no sería equitativo que la sentencia continuara en vigor</u>**[9] **<u>o por cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia</u>**.[10]

En reiteradas ocasiones hemos señalado que, de ordinario, no procede relevar a una parte de las consecuencias producidas por la negligencia o dejadez de su abogado, a menos que se trate de un asunto extraordinario

---

[8]Inciso 3 de la Regla 49.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 49.2(3).

[9]Inciso 5 de la Regla 49.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 49.2(5).

[10]Inciso 6 de la Regla 49.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 49.2(6).

cuya denegatoria produzca un fracaso completo de la justicia. González v. González, 76 D.P.R. 18 (1954). Ello es así, ya que se entiende que en ausencia de circunstancias que justifiquen lo contrario, toda parte que escoja libremente a un representante legal para un litigio no puede evitar las consecuencias de los actos y omisiones de ese abogado. Srio. del Trabajo v. J.C. Penney Co., 119 D.P.R. 660 (1987); Méndez Pérez v. Tribunal Superior, 101 D.P.R. 87 (1973). Así, por ejemplo, se presume que la parte fue apercibida y advertida de todos los hechos y actos que le han sido notificados a su abogado. Barletta v. Tribunal Superior, 99 D.P.R. 379 (1970); Díaz v. Tribunal Superior, 93 D.P.R. 79, 88 (1966).

A pesar de la presunción antes mencionada, la experiencia nos ha enseñado que, en ocasiones, las partes no han sido apercibidas de la actuación negligente de sus abogados. Es por ello, que a los fines de evitar este tipo de situación, enfáticamente hemos requerido que, en aquellos casos en los cuales el tribunal considere que procede la imposición de sanciones, el foro judicial imponga primero las mismas al abogado de las partes. Si dicha acción no resulta en consecuencias positivas, el tribunal deberá informar debidamente a la parte acerca de la situación acaecida y deberá apercibirla del grave resultado que podría tener no corregirla. Sólo después de haber tomado toda esta serie de pasos, es que procederá la severa sanción de la desestimación de la causa de acción o la eliminación de las alegaciones. López Rivera v. Rivera Díaz, op. de 28 de junio de 1996, 141 D.P.R. ___, 96 JTS 102; Amaro González v. First Federal Savings Bank, op. de 30 de marzo de 1993, 132 D.P.R. __, 93 JTS 46; Maldonado v. Srio de Rec. Naturales, 113 D.P.R. 494 (1982).

Ciertamente, una parte no debe sufrir la desestimación de su caso por los errores o desmanes cometidos por su abogado cuando, con anterioridad a ello, el tribunal no le apercibe de lo acontecido y no le brinda la oportunidad de corregir los mismos por otros medios. El apercibimiento previo por el tribunal constituye un requisito ineludible a falta del cual no procede la desestimación de la causa de acción.

La Regla 49.2 de las de Procedimiento Civil resulta ser el mecanismo adecuado para relevar a una parte de una sentencia que desestima su causa de acción debido a la inacción y negligencia de su abogado cuando el tribunal no le ha dado a dicha parte, previo aviso de la conducta que dio lugar a esa consecuencia. Nótese que, a pesar de que el mecanismo provisto por la Regla 49.2 no es una llave maestra para reabrir un caso adjudicado, la amplitud del inciso 6 de esa Regla, permite se corrija un error a todas luces injusto. Negrón Rivera y Bonilla, Ex parte, 120 D.P.R. 61 (1987); Sucn. Bravo v. Srio. de Hacienda, 106 D.P.R. 672 (1978).

Tal es la situación en el caso de autos. Así propiamente lo reconoció el tribunal de instancia en los incisos 10, 14, 15 y 18[11] de la conclusiones de derecho de la sentencia que emitiera el 31 de octubre de 1995, denegando la moción de relevo solicitada. En estos incisos, dicho foro específica- mente concluyó que la evidencia demostró una falta de comunicación del abogado para con sus clientes, una conducta negligente y un abandono de sus deberes para con éstos. Los demandantes nunca se enteraron de las sentencias emitidas en su contra debido a la crasa falta de diligencia de su propio abogado y no por culpa propia. Asimismo, con anterioridad a la desestimación de su causa, y contrario a lo requerido por este Tribunal, los demandantes nunca fueron apercibidos directamente por el foro a quo de lo que acontecía en su caso.

Evidentemente, aun cuando concurro con el tribunal de instancia en que estos hechos per se, no demuestran la existencia de fraude, no cabe duda de que sí constituyen razón suficiente para relevar a los demandantes de los efectos de la sentencia que archivó su caso, al amparo del inciso 6 de la Regla 49.2.

Nótese, que la sentencia de 27 de febrero de 1987 fue producto de la inacción del abogado en la tramitación de este caso. Los clientes trataron por todos los medios posibles de averiguar el estado de su

---

[11]Erróneamente enumerado como el número 16 por el tribunal de instancia.

reclamación haciendo gestiones afirmativas para dialogar al respecto con su abogado, con resultados infructuosos. Incluso, tan pronto advinieron en conocimiento de que su causa de acción había sido desestimada, sin el debido apercibimiento, contrataron otra representación legal que corrigiera lo más pronto posible los errores cometidos. No cabe duda del probado interés de los demandantes en su reclamación, y sería injusto privarlos de su acción por la conducta de su abogado, que ni siquiera conocían. Por ello, procede el relevo de la antes mencionada sentencia, bajo el inciso 6 de la Regla 49.2.

Por último, resulta menester señalar, que reconozco que la parte demandada también resultó perjudicada en este caso. Los costos exorbitantes en que ha incurrido, producto de muchos años de litigación y la incertidumbre de un litigio pendiente que podría parecer no tiene final, es una carga onerosa de llevar. Sin embargo, **en el balance racional y justiciero de intereses en pugna, debe prevalecer el hecho de que los demandantes no fueron responsables de lo acontecido y que tampoco se les dio la oportunidad que les correspondía de dilucidar su reclamación**.

A pesar de los fundamentos expuestos antes, una exigua mayoría del tribunal se niega a revocar la sentencia emitida por el Tribunal de Circuito de Apelaciones el 7 de mayo de 1996, y deniega la reapertura del caso de autos en el Tribunal de Primera Instancia. En consecuencia, unas personas con una reclamación sustancial e importante se quedan sin su día en corte. En efecto, una mayoría exigua de este Tribunal les niega el fundamental derecho humano de tener acceso efectivo al proceso judicial, y lo hace al sujetar ese derecho a una interpretación procesalista no sólo rígida en extremo sino una que este Foro ya había rechazado recientemente.

La ingente y medular tarea judicial de hacer justicia queda, pues, sometida a las inconsistencias de algunos miembros de este Foro, y a la propensión a darle más importancia a la decadente y desacreditada aplicación rigorista de las formas y los procedimientos que a la meta

ilustrada y sensata de marchar hacia la humanización de la justicia y el derecho.  Por ello, Disiento.


                                                    JAIME B. FUSTER BERLINGERI
                                                         JUEZ ASOCIADO